UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD MCDUFF, #204491,

        Plaintiff,                           Hon. Janet T. Neff

v.                                       Case No. 1:22-cv-20

PATRICIA WILLARD,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 46).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) where the events giving rise to this action occurred.   Plaintiff initiated this action against thirteen individuals employed at LCF: (1) Nathen Mikel; (2) E'Coe Hill; (3) Barbara Anderson; (4) Rosemary Villasan; (5) Jennifer Meyer; (6) Mary Schultz; (7) Lori Blue; (8) S. Smoyer; (9) Subrina Aiken; (10) Michelle Peconge; (11) Taylor Schwartz; (12) John Quiggly; and (13) Unknown Sobieralski.   In his amended complaint, (ECF No. 16), Plaintiff alleges the following.

-1-

On October 16, 2017, a dietician cancelled Plaintiff's detail for a non-dairy diet. On October 24, 2017, Defendant Hill reported that Plaintiff "is allergic to specific dairy proteins that were not tested for in previous RAST testing." Hill further reported that Plaintiff's detail for a non-dairy diet was renewed by a doctor. On March 24, 2019, Plaintiff's detail for a non-dairy diet was again renewed.

On or about January 22, 2021, Plaintiff's non-dairy diet detail was cancelled by Defendants Anderson and Quiggly. Later that day, Plaintiff requested that his detail be renewed. In response, Defendant Schultz informed Plaintiff that "a chart review will be sent to your [medical provider]." On January 27, 2021, Plaintiff again requested that his detail be renewed. The following day, Schultz informed Plaintiff that his medical provider had denied his request due to "negative RAST testing" and a lack of "objective data" to support Plaintiff's alleged need for a non-dairy diet.

Plaintiff subsequently began to develop a rash and rectal bleeding caused by the dairy in his diet. On February 6, 2021, Plaintiff was instructed by "a health care nurse not to eat meals with dairy products." Accordingly, Plaintiff again requested that his non-dairy diet detail be renewed. On February 12, 2021, Defendant Villasan informed Plaintiff that based on the results of a 2001 RAST test, he was able to safely consume dairy products. Plaintiff, however, continued to experience a rash caused by the dairy in his diet. On February 24, 2021, Defendant Villasan informed Plaintiff that she did not discern any reason why Plaintiff could not safely eat dairy products.

Plaintiff requested that further medical testing be performed to determine whether his rash was caused by his consumption of dairy products. Defendant Meyer responded that, based on the results of previous testing and examinations, there existed "no medical need for a milk free diet." In response to further complaints by Plaintiff, Defendant Schultz reiterated to Plaintiff that his medical history "shows no evidence of adverse reactions to dairy."

On March 15, 2021, Plaintiff reported that he was experiencing: (1) an "extremely sensitive and painful" rash; (2) fluid in his lungs; and (3) blood in his stool after eating pizza and grilled cheese. The following day, Defendant Schultz informed Plaintiff that she would notify his medical provider and dietician of his complaints. On March 24, 2021, Plaintiff reported that he was "still being denied health care" by the individuals to whom he has complained and reported his symptoms. Plaintiff further reported that he was forced to skip meals so as to not exacerbate his symptoms.

On March 28, 2021, Plaintiff wrote to Health Care requesting treatment. Plaintiff noted that he had submitted fifteen such requests since January 22, 2021, but yet had "only been seen once." On April 2, 2021, Defendant Mikel informed Plaintiff, "if you have noticed that you are having issues after eating dairy, then stop eating dairy. You have the right to self-select at the diet line." Plaintiff responded that Mikel's comments did not address Plaintiff's request for medical treatment for the symptoms he was experiencing.

On April 5, 2021, Plaintiff submitted blood for dairy allergy testing. On April 22, 2021, Plaintiff was informed that his recent blood test was "negative for dairy, cheese and molds." Plaintiff responded by again requesting medical treatment for the symptoms he was experiencing. Plaintiff also informed Health Care that the RAST test they used to test his blood "would not show [his] protein allergy." Plaintiff requested that the appropriate testing be performed to assess his protein allergy. On April 30, 2021, Defendant Mikel informed Plaintiff, "you have been educated not to eat the foods that cause you to break out. Testing has been completed and is negative."

On May 24, 2021, reported to Health Care, "I have rashes on both legs, my left wrist, right hand and wrist. Also, my rectum still bleeds & I must insert hydrocortisone into my rectum just to defecate. I ask that I be called out so photos can be taken. Maybe then a Dr. will actually see me." Plaintiff's medical provider, Defendant Hill, "did not respond, examine or inquire into [Plaintiff's] pleas for help." Plaintiff submitted a similar complaint the following day, in response to which Defendant Meyer informed Plaintiff that nursing would "evaluate" his complaints.

Plaintiff continued to complain about his worsening symptoms and lack of medical treatment. On June 25, 2021, Defendant Mikel informed Plaintiff:

> It has been recommended multiple times that you refrain from eating dairy products. At each visit you have come to you keep saying you are eating dairy to keep the rash going for pictures to be taken. It has been recommended [by your dietician and medical provider] that you self-select from the diet line. Stop eating the foods that you feel trigger this response.

On July 12, 2021, Plaintiff wrote to Health Care requesting medical treatment for the blood that had been discovered in his stools.   Plaintiff's request was denied. On July 22, 2021, Plaintiff again requested medical care, but was again denied.   On December 1, 2021, Plaintiff reported that he had not eaten dairy "for months," which had caused him to miss "a lot of meals," but his rashes "are mostly gone."   Plaintiff further reported, however, that he nevertheless had "large scars across [his] body" caused by the dairy-induced rashes he experienced.

Plaintiff alleges that all thirteen defendants violated his Eighth Amendment right to be free from cruel and unusual punishment.   Defendants Meyer, Blue, Villasan, and Smoyer now move for relief.   Specifically, Defendants move to dismiss Plaintiff's claims for failure to exhaust available administrative remedies.   Plaintiff has responded to Defendants' motion.   The Court finds that oral argument is unnecessary.   *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).  The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).  Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.   Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at \*4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."   *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).   Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies.   *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).   This obligation only extends, however, to such administrative remedies as are available.   *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid.*

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006).   In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'   The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.   (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ W

(Mar. 18, 2019).   The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."   MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.   MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).   If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III.   MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of their motion, Defendants have identified four grievances which Plaintiff filed during the relevant time period.   (ECF No. 47, PageID.337-38, 359-81). Defendants argue that none of these grievances serve to exhaust any of Plaintiff's claims against them.   Plaintiff does not argue that he pursued any additional grievances. Instead, Plaintiff argues that the four grievances in question do, in fact, exhaust his claims against these Defendants.   A review of these grievances, however, reveals that Defendants are entitled to relief.

1.    Grievance LCF 21-02-0117-12h

Plaintiff initiated this grievance on January 31, 2021, alleging that Defendants Quiggly, Hill, Schultz, and John/Jane Doe, later identified by Plaintiff as Defendant Anderson, improperly cancelled his detail for a dairy-free diet.   (ECF No. 15, PageID.62; ECF No. 47-3, PageID.380).   Plaintiff's Step I grievance does not refer to, or make

allegations against, Defendants Meyer, Blue, Villasan, or Smoyer.    Furthermore, there is no suggestion that Plaintiff asserted the grievance against additional individuals whose names or identities were unknown.

MDOC grievance policy provides that grievances must briefly state the issue being grieved and, furthermore, must include the "[d]ates, times, places, and *names* of all those involved in the issue being grieved."    MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019) (emphasis added).    It is well understood that this policy requires prisoners to identify in their Step I grievance the individual(s) against whom the grievance is asserted.    *See, e.g., Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).    Accordingly, this grievance fails to exhaust any of Plaintiff's claims against Defendants Meyer, Blue, Villasan, or Smoyer.

Plaintiff advances two arguments in opposition to Defendants' motion, neither of which is persuasive.    First, Plaintiff argues that he was not required to include in his Step I grievance the names or identities of the individuals against whom his grievance was asserted.    As the authority cited immediately above makes clear, it has long been recognized that MDOC grievance policy required inmates to "include the dates, times, places and names of all those involved in the issue being grieved in their initial grievance."    *Reed-Bey*, 603 F.3d at 324.    Plaintiff argues, however, that this authority concerns an interpretation of a previous version of MDOC grievance policy.    Plaintiff further argues that the current version of MDOC policy, applicable to the events giving

rise to this action, does not require him to name or identify in his Step I grievance the individuals against whom the grievance is asserted.

Plaintiff is correct that *Reed-Bey* and other decisions concerned a previous version of the relevant MDOC grievance policy.   But, with respect to the requirement that a prisoner name or identify in his Step I grievance the individuals against whom the grievance is asserted, the language of the current MDOC grievance policy contains the same language as the previous version of the policy.   *See* MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019) (the issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included").   Moreover, courts have interpreted this current version of the MDOC grievance policy as likewise requiring prisoners to name or identify in their Step I grievance the individuals against whom the grievance is asserted.   *See, e.g., Moore v. Westcomb*, 2021 WL 2383725 at *4 (W.D. Mich., Apr. 8, 2021) ("[w]here a prisoner fails to name a defendant in his Step I grievance, the claim against that individual is not properly exhausted"); *Joyce v. Bergeron*, 2022 WL 3648741 at *9 (W.D. Mich., July 25, 2022) (where prisoner failed to name, or otherwise make reference to, defendant in his Step I grievance, dismissal on failure to exhaust grounds was appropriate).   Plaintiff has failed to identify authority supporting his interpretation of the current MDOC grievance policy.   Accordingly, this argument is rejected.

Next, Plaintiff argues that Defendants have waived any argument that he failed to name or identify them in his Step I grievance.   As Plaintiff notes, if prison officials decline to enforce failures to comply with procedural rules or requirements, the Court generally cannot enforce such rules or requirements.   *See, e.g., Reed-Bey*, 603 F.3d at 324-25.   The shortcoming with Plaintiff's argument is that this authority concerns circumstances in which prison officials *knowingly* decline to enforce the MDOC's grievance rules or procedures.   Here, Plaintiff named or identified at least one individual in his Step I grievance.   Prison officials had no way of knowing that Plaintiff would later seek to sue persons not named or identified in his grievance.   Thus, prison officials cannot be held to have knowingly waived Plaintiff's failure to comply the MDOC grievance policy.   Plaintiff has failed to identify authority supporting his interpretation of the relevant authority.   This argument is, therefore, rejected.

2.    Grievance LCF 21-04-0494-28e

Plaintiff initiated this grievance on April 25, 2021, alleging that Defendant Mikel and Dr. Yarid denied his request to be re-tested for dairy allergies.   (ECF No. 47-3, PageID.371).   Plaintiff's Step I grievance does not refer to, or make allegations against, Defendants Meyer, Blue, Villasan, or Smoyer.   Furthermore, there is no suggestion that Plaintiff asserted the grievance against additional individuals whose names or identities were unknown.   Accordingly, this grievance fails to exhaust any of Plaintiff's claims against these Defendants.   In opposition, Plaintiff advances the same two arguments rejected above.

3.    Grievance LCF 21-05-0583-12e1

Plaintiff initiated this grievance on May 26, 2021, against Defendants Peconge, Schultz, and Sobieralski alleging that they refused his request to photograph his rash for "documentation" or otherwise provide him medical treatment.   (ECF No. 47-3, PageID.367).   Plaintiff's Step I grievance does not refer to, or make allegations against, Defendants Meyer, Blue, Villasan, or Smoyer.   Furthermore, there is no suggestion that Plaintiff asserted the grievance against additional individuals whose names or identities were unknown.   Accordingly, this grievance fails to exhaust any of Plaintiff's claims against these Defendants.   In opposition, Plaintiff advances the same two arguments rejected above.

4.    Grievance LCF 21-03-0266-28i

Plaintiff initiated this grievance on March 10, 2021, alleging that mail from the parole board has been improperly delayed for four months.   (ECF No. 47-3, PageID.375).   This grievance does not concern any of the allegations in Plaintiff's complaint and, therefore, cannot serve to exhaust any of Plaintiff's claims against Defendants Meyer, Blue, Villasan, or Smoyer.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 46) be granted and Plaintiff's claims against Defendants Meyer, Blue, Villasan, or Smoyer be dismissed without prejudice for failure to exhaust administrative remedies.   For the same reasons the undersigned

-13-

makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: November 30, 2022

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge