UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

R‍ICHARD M‍CD‍UFF, #204491,

       Plaintiff,                                  Hon. Janet T. Neff

v.                                            Case No. 1:22-cv-20

P‍ATRICIA W‍ILLARD,

       Defendant.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 76). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be dismissed as moot in part, granted in part, and denied in part.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility. Plaintiff was previously incarcerated at the Lakeland Correctional Facility (LCF) where the events giving rise to this action occurred. Plaintiff initiated this action against thirteen individuals employed at LCF: (1) Nathen Mikel; (2) E'Coe Hill; (3) Barbara Anderson; (4) Rosemary Villasan; (5) Jennifer Meyer; (6) Mary Schultz; (7) Lori Blue; (8) S. Smoyer; (9) Subrina Aiken; (10) Michelle Peconge; (11) Taylor Schwartz; (12) John

-1-

Quiggly; and (13) Unknown Sobieralski. In his amended complaint (ECF No. 16), Plaintiff alleges the following.

On October 16, 2017, a dietician cancelled Plaintiff's detail for a non-dairy diet. On October 24, 2017, Defendant Hill reported that Plaintiff "is allergic to specific dairy proteins that were not tested for in previous RAST testing." Hill further reported that Plaintiff's detail for a non-dairy diet was renewed by a doctor. On March 24, 2019, Plaintiff's detail for a non-dairy diet was again renewed.

On or about January 22, 2021, Plaintiff's non-dairy diet detail was cancelled by Defendants Anderson and Quiggly. Later that day, Plaintiff requested that his detail be renewed. In response, Defendant Schultz informed Plaintiff that "a chart review will be sent to your [medical provider]." On January 27, 2021, Plaintiff again requested that his detail be renewed. The following day, Schultz informed Plaintiff that his medical provider had denied his request due to "negative RAST testing" and a lack of "objective data" to support Plaintiff's alleged need for a non-dairy diet.

Plaintiff subsequently began to develop a rash and rectal bleeding caused by the dairy in his diet. On February 6, 2021, Plaintiff was instructed by "a health care nurse not to eat meals with dairy products." Accordingly, Plaintiff again requested that his non-dairy diet detail be renewed. On February 12, 2021, Defendant Villasan informed Plaintiff that based on the results of a 2001 RAST test, he was able to safely consume dairy products. Plaintiff, however, continued to experience a rash caused

by the dairy in his diet. On February 24, 2021, Defendant Villasan informed Plaintiff that she did not discern any reason why Plaintiff could not safely eat dairy products.

Plaintiff requested that further medical testing be performed to determine whether his rash was caused by his consumption of dairy products. Defendant Meyer responded that, based on the results of previous testing and examinations, there existed "no medical need for a milk free diet." In response to further complaints by Plaintiff, Defendant Schultz reiterated to Plaintiff that his medical history "shows no evidence of adverse reactions to dairy."

On March 15, 2021, Plaintiff reported that he was experiencing: (1) an "extremely sensitive and painful" rash; (2) fluid in his lungs; and (3) blood in his stool after eating pizza and grilled cheese. The following day, Defendant Schultz informed Plaintiff that she would notify his medical provider and dietician of his complaints. On March 24, 2021, Plaintiff reported that he was "still being denied health care" by the individuals to whom he has complained and reported his symptoms. Plaintiff further reported that he was forced to skip meals so as to not exacerbate his symptoms.

On March 28, 2021, Plaintiff wrote to Health Care requesting treatment. Plaintiff noted that he had submitted fifteen such requests since January 22, 2021, but yet had "only been seen once." On April 2, 2021, Defendant Mikel informed Plaintiff, "if you have noticed that you are having issues after eating dairy, then stop eating dairy. You have the right to self-select at the diet line." Plaintiff responded

that Mikel's comments did not address Plaintiff's request for medical treatment for the symptoms he was experiencing.

On April 5, 2021, Plaintiff submitted blood for dairy allergy testing. On April 22, 2021, Plaintiff was informed that his recent blood test was "negative for dairy, cheese and molds." Plaintiff responded by again requesting medical treatment for the symptoms he was experiencing. Plaintiff also informed Health Care that the RAST test they used to test his blood "would not show [his] protein allergy." Plaintiff requested that the appropriate testing be performed to assess his protein allergy. On April 30, 2021, Defendant Mikel informed Plaintiff, "you have been educated not to eat the foods that cause you to break out. Testing has been completed and is negative."

On May 24, 2021, reported to Health Care, "I have rashes on both legs, my left wrist, right hand and wrist. Also, my rectum still bleeds & I must insert hydrocortisone into my rectum just to defecate. I ask that I be called out so photos can be taken. Maybe then a Dr. will actually see me." Plaintiff's medical provider, Defendant Hill, "did not respond, examine or inquire into [Plaintiff's] pleas for help." Plaintiff submitted a similar complaint the following day, in response to which Defendant Meyer informed Plaintiff that nursing would "evaluate" his complaints.

Plaintiff continued to complain about his worsening symptoms and lack of medical treatment. On June 25, 2021, Defendant Mikel informed Plaintiff:

> It has been recommended multiple times that you refrain from eating dairy products. At each visit you have come to you keep saying you are

eating dairy to keep the rash going for pictures to be taken. It has been recommended [by your dietician and medical provider] that you self-select from the diet line. Stop eating the foods that you feel trigger this response.

On July 12, 2021, Plaintiff wrote to Health Care requesting medical treatment for the blood that had been discovered in his stools. Plaintiff's request was denied. On July 22, 2021, Plaintiff again requested medical care, but was again denied. On December 1, 2021, Plaintiff reported that he had not eaten dairy "for months," which had caused him to miss "a lot of meals," but his rashes "are mostly gone." Plaintiff further reported, however, that he nevertheless had "large scars across [his] body" caused by the dairy-induced rashes he experienced.

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's claims against Defendants Hill, Meyer, Blue, Villasan, and Smoyer have since been dismissed. Defendants Blue,[1] Schultz, and Peconge now move to dismiss Plaintiff's claims for failure to state a claim on which relief may be granted. Plaintiff has responded to Defendant's motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

---

[1] Plaintiff's claims against Defendant Blue have already been dismissed. (ECF No. 63, 98). Accordingly, the undersigned recommends that as to Defendant Blue, the present motion be dismissed as moot.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000).

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from

> the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

## ANALYSIS

### I.   Individual Capacity Claims

Plaintiff has sued Defendants Schultz and Peconge in both their official and individual capacities.  The Court will first examine Defendants' argument that Plaintiff's claims against them in their individual capacity fail to state a claim.

   A.   Defendant Schultz

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.   *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."   *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But, where the plaintiff complains not of a denial of treatment but simply a delay in treatment, he must present evidence establishing that he suffered harm caused by the delay in treatment. *See Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001) ("an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment").

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To satisfy this part of the analysis, Plaintiff must demonstrate that Defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

Defendant argues that she is entitled to relief because Plaintiff's allegations fail to state a claim on which relief may be granted. In his amended complaint, Plaintiff details the difficulty he was allegedly experiencing due to what Plaintiff believed was an untreated food allergy. Specifically, on January 22, 2021, Plaintiff requested that his non-dairy diet be renewed. (ECF No. 16 at ¶ 14). In response, Defendant Schultz did not examine or speak with Plaintiff but instead concluded that based on a test performed 20 years previously there existed no basis to grant Plaintiff's request. (*Id.* at ¶ 16).

On April 12, 2021, Plaintiff reported to Health Care that he was continuing to experience "rash and internal bleeding" due to being forced to consume foods to which he was allergic. (*Id.* at ¶ 54). Defendant Schultz responded to Plaintiff's complaint by referring it to someone else. (*Id.*). Defendant did not speak with or examine Plaintiff. (*Id.*).

On May 24, 2021, Plaintiff complained to Health Care that he was still suffering the effects of being forced to eat foods to which he was allergic. (*Id.* at ¶ 81). Specifically, Plaintiff reported that he had "rashes" on all his extremities and was

experiencing a bleeding rectum. (*Id.*). Plaintiff requested that his condition be photographed as evidence of what he was experiencing. (*Id.*). Defendant rejected Plaintiff's assertion that he was experiencing food allergies. (*Id.* at ¶ 82). Defendant also rejected Plaintiff's request to have his condition photographed despite such being previously approved by a medical provider. (*Id.*).

On July 22, 2021, Plaintiff reported to Health Care that he was "suffering from blood in my stool and painful rashes." (*Id.* at ¶ 100). Plaintiff specifically requested medical treatment. (*Id.*). Defendant responded to Plaintiff's request by indicating that he would be scheduled for an appointment with a nurse. (*Id.*). Defendant did not examine or speak with Plaintiff. (*Id.*).

On December 1, 2021, Plaintiff reported to Health Care that he now had "large scars" caused by the "extreme and painful rashes" he was experiencing. (*Id.* at ¶ 104). Plaintiff again requested this his injuries be photographed. (*Id.*). Defendant responded that his request would be forwarded to someone else. (*Id.*). Defendant did not speak with or examine Plaintiff. (*Id.*).

Defendant may ultimately be able to produce evidence which entitles her to relief. At this juncture, however, Plaintiff's allegations, interpreted in a light most favorable to Plaintiff, are sufficient to state a claim for violation of his Eighth Amendment rights. Defendant's various arguments otherwise are unpersuasive.

Defendant first argues that Plaintiff "has alleged *only* that [she] responded to certain of [Plaintiff's] 41 medical requests ("Kites"), but that [she] did so in a way that Plaintiff felt was insufficient."  (ECF No. 76-1 at PageID.543).  From this, Defendant argues that she is entitled to relief because "[t]he mere denial of a grievance is <u>insufficient</u> to give rise to a valid claim for §1983 liability."  (*Id.*).  Defendant may be correct that §1983 liability cannot generally be premised on a defendant's denial or response to a grievance.  The shortcoming with Defendant's argument, however, is that a request for medical treatment is *not* a grievance.  Accordingly, this argument is rejected.

Defendant next argues that she is entitled to relief because claims of medical malpractice are "legally distinct" from allegations of deliberate indifference under the Eighth Amendment.  (ECF No. 76-1 at PageID.543).  The Court agrees, but Plaintiff has not advanced claims of medical malpractice; rather, he alleges that Defendant was deliberately indifferent to his serious medical needs.  Accordingly, this argument is rejected.

Defendant next advances the curious argument that Plaintiff's complaint lacks the requisite specificity to state a claim.  As noted above, Defendant concedes that Plaintiff has alleged that she failed to adequately respond to numerous requests for medical treatment.  In his amended complaint, Plaintiff describes the relevant events in incredible detail.  This argument is, therefore, rejected.

Defendant next advances the equally curious argument that because she was a "non-medical professional. . .working in a subordinate role" she is entitled to relief. This argument fails for at least two reasons. First, Plaintiff alleges that Defendant Schultz is a registered nurse and Defendant has failed to identify authority even suggesting that a registered nurse is not a medical professional. Second, Plaintiff does not allege that he was receiving adequate care from other medical professionals thus, perhaps, permitting Defendant to defer to the medical judgments of others. Even a cursory review of Plaintiff's complaint reveals that the essence of Plaintiff's claims is that *nobody* was providing him with appropriate medical care including Defendant Schultz. Again, Defendant may ultimately be able to present evidence entitling her to relief. At this juncture, however, Plaintiff's allegations are sufficient.

In sum, Plaintiff has alleged sufficient facts, which if accepted as true, could support a reasonable person concluding that Defendant was aware that Plaintiff was experiencing a serious medical need and failed to respond adequately thereto. Accordingly, the undersigned recommends that Defendant Schultz's motion to dismiss Plaintiff's individual capacity claims be denied.

B. Defendant Peconge

On April 28, 2021, Plaintiff submitted a written request to Defendant Peconge for medical treatment. (*Id.* at ¶ 75). Defendant did not respond to Plaintiff's request. (*Id.*). On July 12, 2021, Plaintiff, noting that recent testing was "positive for blood" in his stool, requested medical treatment. (*Id.* at ¶ 97). Defendant responded to Plaintiff,

informing him that he would have to be examined by a nurse before meeting with anybody else.  (*Id.* at ¶ 98).  Despite being a nurse, Defendant did not examine or speak with Plaintiff.  (*Id.*).

Defendant may ultimately be able to produce evidence that entitles her to relief. At this juncture, however, Plaintiff's allegations, interpreted in a light most favorable to Plaintiff, are sufficient to state a claim for violation of his Eighth Amendment rights. Defendant's various arguments otherwise are unpersuasive for the reasons discussed above.  In sum, Plaintiff has alleged sufficient facts, which if accepted as true, could support a reasonable person concluding that Defendant was aware that Plaintiff was experiencing a serious medical need and failed to respond adequately thereto. Accordingly, the undersigned recommends that Defendant Peconge's motion to dismiss Plaintiff's individual capacity claims be denied.

## II. Official Capacity Claims

In his response to the present motion, Plaintiff asserts that his official capacity claims "rested upon his request for injunctive relief."  (ECF No. 108 at PageID.707). But Plaintiff further asserts that his "official capacity claims are now moot" because he is no longer under Defendants' care.  (*Id.*).  Accordingly, the undersigned recommends that Plaintiff's official capacity claims against Defendants Schultz and Peconge be dismissed as moot.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 76) be dismissed as moot in part, granted in part, and denied in part. Specifically, the undersigned recommends that: (1) as to Plaintiff's claims against Defendant Blue, Defendant's motion be denied as moot; (2) as to Plaintiff's claims against Defendants Schultz and Peconge in their personal capacity, Defendants' motion be denied; and (3) Plaintiff's claims against Defendants Schultz and Peconge in their official capacity be dismissed as moot.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Dated: December 20, 2023

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge