UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD MCDUFF, #204491,

    Plaintiff,                                   Hon. Janet T. Neff

v.                                                    Case No. 1:22-cv-20

PATRICIA WILLARD, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 143) and Defendant's Motion for Summary Judgment (ECF No. 146). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motions both be granted and this matter terminated.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility. Plaintiff was previously incarcerated at the Lakeland Correctional Facility (LCF) where the events giving rise to this action occurred. Plaintiff initiated this action against thirteen individuals employed at LCF: (1) Nathen Mikel; (2) E'Coe Hill; (3) Barbara Anderson; (4) Rosemary Villasan; (5) Jennifer Meyer; (6) Mary Schultz; (7) Lori Blue; (8) S. Smoyer; (9) Subrina Aiken; (10) Michelle Peconge; (11) Taylor Schwartz; (12) John

-1-

Quiggly; and (13) Unknown Sobieralski.  In his amended complaint (ECF No. 16), Plaintiff alleges the following.

On October 16, 2017, a dietician cancelled Plaintiff's detail for a non-dairy diet. On October 24, 2017, Defendant Hill reported that Plaintiff "is allergic to specific dairy proteins that were not tested for in previous RAST testing."  Hill further reported that Plaintiff's detail for a non-dairy diet was renewed by a doctor.  On March 24, 2019, Plaintiff's detail for a non-dairy diet was again renewed.

On or about January 22, 2021, Plaintiff's non-dairy diet detail was cancelled by Defendants Anderson and Quiggly.   Later that day, Plaintiff requested that his detail be renewed.  In response, Defendant Schultz informed Plaintiff that "a chart review will be sent to your [medical provider]."  On January 27, 2021, Plaintiff again requested that his detail be renewed.  The following day, Schultz informed Plaintiff that his medical provider had denied his request due to "negative RAST testing" and a lack of "objective data" to support Plaintiff's alleged need for a non-dairy diet.

Plaintiff subsequently began to develop a rash and rectal bleeding caused by the dairy in his diet.  On February 6, 2021, Plaintiff was instructed by "a health care nurse not to eat meals with dairy products."  Accordingly, Plaintiff again requested that his non-dairy diet detail be renewed.  On February 12, 2021, Defendant Villasan informed Plaintiff that based on the results of a previous RAST test, he was able to safely consume dairy products.  Plaintiff, however, continued to experience a rash caused by the dairy in his diet.  On February 24, 2021, Defendant Villasan informed

Plaintiff that she did not discern any reason why Plaintiff could not safely eat dairy products.

Plaintiff requested that further medical testing be performed to determine whether his rash was caused by his consumption of dairy products. Defendant Meyer responded that, based on the results of previous testing and examinations, there existed "no medical need for a milk free diet." In response to further complaints by Plaintiff, Defendant Schultz reiterated to Plaintiff that his medical history "shows no evidence of adverse reactions to dairy."

On March 15, 2021, Plaintiff reported that he was experiencing: (1) an "extremely sensitive and painful" rash; (2) fluid in his lungs; and (3) blood in his stool after eating pizza and grilled cheese. The following day, Defendant Schultz informed Plaintiff that she would notify his medical provider and dietician of his complaints. On March 24, 2021, Plaintiff reported that he was "still being denied health care" by the individuals to whom he has complained and reported his symptoms. Plaintiff further reported that he was forced to skip meals so as to not exacerbate his symptoms.

On March 28, 2021, Plaintiff wrote to Health Care requesting treatment. Plaintiff noted that he had submitted fifteen such requests since January 22, 2021, but yet had "only been seen once." On April 2, 2021, Defendant Mikel informed Plaintiff, "if you have noticed that you are having issues after eating dairy, then stop eating dairy. You have the right to self-select at the diet line."

On April 5, 2021, Plaintiff submitted blood for dairy allergy testing. On April 22, 2021, Plaintiff was informed that his recent blood test was "negative for dairy, cheese and molds." Plaintiff responded by again requesting medical treatment for the symptoms he was experiencing. Plaintiff also informed Health Care that the RAST test they used to test his blood "would not show [his] protein allergy." Plaintiff requested that the appropriate testing be performed to assess his protein allergy. On April 30, 2021, Defendant Mikel informed Plaintiff, "you have been educated not to eat the foods that cause you to break out. Testing has been completed and is negative."

On May 24, 2021, Plaintiff reported to Health Care, "I have rashes on both legs, my left wrist, right hand and wrist. Also, my rectum still bleeds & I must insert hydrocortisone into my rectum just to defecate. I ask that I be called out so photos can be taken. Maybe then a Dr. will actually see me." Plaintiff's medical provider, Defendant Hill, "did not respond, examine or inquire into [Plaintiff's] pleas for help." Plaintiff submitted a similar complaint the following day, in response to which Defendant Meyer informed Plaintiff that nursing would "evaluate" his complaints.

Plaintiff continued to complain about his symptoms and lack of medical treatment. On June 25, 2021, Defendant Mikel informed Plaintiff:

> It has been recommended multiple times that you refrain from eating dairy products. At each visit you have come to you keep saying you are eating dairy to keep the rash going for pictures to be taken. It has been recommended [by your dietician and medical provider] that you self-select from the diet line. Stop eating the foods that you feel trigger this response.

On July 12, 2021, Plaintiff wrote to Health Care requesting medical treatment for the blood that had been discovered in his stools. Plaintiff's request was denied. On July 22, 2021, Plaintiff again requested medical care, but was again denied. On December 1, 2021, Plaintiff reported that he had not eaten dairy "for months," which had caused him to miss "a lot of meals," but his rashes "are mostly gone." Plaintiff further reported, however, that he nevertheless had "large scars across [his] body" caused by the dairy-induced rashes he experienced.

Plaintiff alleges that all thirteen defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff's claims against Defendants Hill, Meyer, Blue, Peconge, Villasan, Smoyer, Aiken, and Schwartz have since been dismissed. Defendants Mikel, Anderson, Schultz, Quiggly, and Sobieralski now move for summary judgment. Plaintiff has responded to Defendants' motions. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.  Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

## ANALYSIS

Plaintiff alleges that Defendants Mikel, Anderson, Schultz, Quiggly, and Sobieralski failed to provide him with necessary medical care.  The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976).  Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs."  *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps.  First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious.  A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).  Thus, the

objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*; *see also*, *Phillips v. Tangilag*, 14 F.4d. 524, 535 (6th Cir. 2021) ("only grossly or woefully inadequate care – not just care that falls below a professional standard – can be called 'cruel and unusual'"). Furthermore, a prisoner's "disagreement with the testing and treatment he has received. . .does not rise to the level of an Eighth Amendment violation. Nor does a desire for additional or different treatment. . .suffice to support an Eighth Amendment claim." *Rhinehart*, 894 F.3d at 740. Likewise, allegations of negligence are insufficient to maintain a deliberate indifference claim. *See Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012).

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk

by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). To satisfy this part of the analysis, Plaintiff must demonstrate that Defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

An analysis of Plaintiff's claims against each Defendant is undertaken below. At the outset, however, a general discussion of the medical treatment Plaintiff received during the relevant time period is appropriate. Defendants and Plaintiff have submitted evidence regarding such. This evidence reveals the following.

Treatment notes dated October 11, 2017, indicate that Plaintiff "should have a documented allergy" before being placed on a "no dairy diet." (ECF No.144, PageID.1007). On October 16, 2017, Plaintiff reported that he does not experience lactose intolerance and "never has." (ECF No.144, PageID.1008). Specifically, Plaintiff reported that "milk does not cause gas, stomach cramps, or diarrhea after he consumes it." (ECF No.144, PageID.1008). Plaintiff reported instead that consuming milk "causes him to break out and gives him a skin rash." (*Id.*). Plaintiff further noted, however, that consuming "hot chocolate or boiled milk does not cause him to get a rash." (*Id.*). The nurse concluded that Plaintiff "does not appear to have an allergy to milk or cheese and[/]or lactose intolerance." (*Id.*). The nurse further recommended that Plaintiff's "milk free" diet be discontinued. (*Id.*).

On October 24, 2017, a nurse practitioner surmised that Plaintiff was likely allergic to "specific dairy proteins that were not tested for in previous RAST testing." (ECF No.144, PageID.1011). Accordingly, Plaintiff's "no dairy" diet detail was renewed. (ECF No.144, PageID.1011-12). Plaintiff's "no dairy" diet detail expired the following year on October 31, 2018. (ECF No.144, PageID.1013).

On November 5, 2018, a physician's assistant observed that the "necessity for [Plaintiff's no dairy] diet is unclear." (*Id.*). Plaintiff was again provided with lactase, a medication intended to treat lactose intolerance. (*Id.*). On November 6, 2018, Plaintiff's no dairy diet detail was renewed. (ECF No.144, PageID.1014).

On August 6, 2019, a physician's assistant (PA) noted that several examinations conducted between March 2001 and October 2017 "did not support that [Plaintiff] has an allergy to milk and cheese products." (ECF No.144, PageID.1016). The PA further noted that Plaintiff was not provided a dairy-free diet between July 2008 and October 2017 during which time Plaintiff "did not have any noted intolerances or allergic reactions." (*Id.*).

On January 22, 2021, Defendant Anderson, a registered dietician, reported that there existed "no objective data to support [Plaintiff's] objective complaint" that he is allergic to dairy products. (ECF No.144, PageID.1025). Treatment notes dated January 27, 2021, indicate that Plaintiff's no-dairy diet detail was not renewed. (ECF No.144, PageID.1027). The next day, Plaintiff reported that he was "breaking out [and] having blood in [his] stool" after eating pizza. (ECF No.165, PageID.1570). Plaintiff

-10-

requested this his non-dairy diet be renewed. (*Id.*). Defendant Schultz responded that a dietician, after performing a review of Plaintiff's circumstance, concluded that there did not exist any objective evidence to support Plaintiff's request. (*Id.*).

On February 4, 2021, Plaintiff reported that he had experienced a rash but that it was "better" since using hydrocortisone cream. (ECF No.144, PageID.1028). Two days later, however, Plaintiff requested that his non-dairy diet be renewed because he was experiencing a "rash when eating dairy products." (ECF No.144, PageID.1029). Plaintiff's request was denied. (ECF No.144, PageID.1031).

Treatment notes dated March 31, 2021, indicate that Plaintiff was experiencing an "itchy rash to [his] torso, back and hands." (ECF No.144, PageID.1032). Plaintiff was instructed to "avoid dairy." (ECF No.144, PageID.1033). On April 9, 2021, Plaintiff again participated in RAST allergy testing the results of which revealed that he was not allergic to dairy, cheese, or molds. (ECF No.144, PageID.1036-43). On April 25, 2021, Plaintiff reported that he was experiencing a "rash (red bumps)" after consuming milk and cheese. (ECF No.144, PageID.1044). An examination, however, revealed no evidence of rash. (*Id.*).

On May 26, 2021, Plaintiff was examined by Defendant Sobieralski, a registered nurse. (ECF No. 144, PageID.1048). Plaintiff complained that he was experiencing a rash caused by a "dairy allergy." (*Id.*). Plaintiff also reported that he was experiencing "blood in [his] stool." (*Id.*). With respect to Plaintiff's reports of blood in his stool, Defendant Sobieralski provided Plaintiff with "fecal cards" to enable testing of

his feces. (*Id.*). Defendant Sobieralski also noted that previous such testing had been negative. (*Id.*). Regarding Plaintiff's complaints of rash, Sobieralski concluded that Plaintiff's rash "appears to autoimmune in nature" rather than dairy-based. (ECF No.144, PageID.1048-49).

Treatment notes dated June 14, 2021, indicate that Plaintiff could not be provided a non-dairy diet because "RAST testing is not abnormal to dairy products." (ECF No.144, PageID.1052). The provider ordered "blood work," the results of which revealed that Plaintiff was not experiencing infection, bleeding, or other abnormality. (ECF No.144, PageID.1057).

On July 11, 2021, Plaintiff requested medical treatment but "refused" to be examined by the prison's health care providers, demanding instead to be examined by his "Medical Provider," presumably a physician. (ECF No.144, PageID.1055). On July 25, 2021, Plaintiff returned to health care complaining of "blood in [his] stool and painful rashes." (ECF No.144, PageID.1056). Defendant Sobieralski offered to perform a visual rectal examination to rule out hemorrhoids, but Plaintiff refused and "left appointment without assessment." (*Id.*).

Treatment notes dated January 19, 2022, suggested that Plaintiff is allergic to "Sweet Vernal Grass and Altemaria mold (which can grow indoors and on feed crops)." (ECF No.165, PageID.1560). The provider noted that feed provided to dairy cows may contain these allergens. (*Id.*). The provider further noted, however, that exposure to these allergens was treatable with "Allegra allergy medication (generic)." (*Id.*).

A.     Defendant Mikel

Plaintiff's claims against Defendant Mikel are premised upon numerous alleged events, each of which are assessed below.

First, Plaintiff alleges that Defendant Mikel's response to prison grievances Plaintiff filed against other individuals violated his Eighth Amendment rights. (ECF No. 16, ¶¶ 23-24, 110). These allegations do not involve a request by Plaintiff for medical care from Defendant Mikel nor do they involve circumstances in which Defendant Mikel could have known that Plaintiff then required medical treatment. Accordingly, Defendant Mikel is entitled to summary judgment as to these allegations.

Plaintiff next faults Defendant Mikel's response to a medical kite he submitted on March 6, 2021. (ECF No. 16, ¶¶ 34, 110). This kite, however, was not a request for medical treatment but was instead a grievance by Plaintiff complaining about his perceived lack of proper medical care. (ECF No. 165, PageID.1587). Plaintiff's communication was neither a request for medical care nor represented a circumstance from which Defendant Mikel could have understood that Plaintiff then required medical treatment. Accordingly, Defendant Mikel is entitled to summary judgment regarding this incident.

Plaintiff faults Defendant Mikel's response to a medical kite he submitted on March 24, 2021. (ECF No. 16, ¶¶ 43, 110). This kite, however, was not a request for medical treatment but was instead a grievance by Plaintiff complaining about his perceived lack of proper medical care. (ECF No. 165, PageID.1593). Moreover, this

kite was responded to by someone else. (*Id.*). Thus, there is no evidence that Defendant Mikel was ever aware of this communication. Accordingly, Defendant Mikel is entitled to summary judgment regarding this incident.

Plaintiff faults Defendant Mikel's response to a medical kite he submitted on April 5, 2021. (ECF No. 16, ¶¶ 52, 110). Again, this kite was not a request for medical treatment but simply a continuation of Plaintiff's general complaints about the care he was receiving for his alleged dairy allergy. (ECF No. 165, PageID.1602). Plaintiff was examined by a nurse on the evening of April 5, 2021. (ECF No. 144, PageID.1035). This examination failed to reveal that Plaintiff was experiencing any abnormality or otherwise required medical treatment. (*Id.*). Accordingly, Defendant Mikel is entitled to summary judgment regarding this incident.

Plaintiff next alleges that Defendant Mikel violated his rights by informing Plaintiff, on April 23, 2021, that Plaintiff's "RAST testing was negative," indicating that he did not experience a dairy allergy requiring a non-dairy diet. (ECF No. 16, ¶¶ 68, 110). As discussed above, this was an entirely accurate statement. Accurately informing Plaintiff of the results of a medical test cannot form the basis for a claim of deliberate indifference. Accordingly, Defendant Mikel is entitled to summary judgment regarding this incident.

On April 25, 2021, Plaintiff submitted a medical kite to Defendant Mikel complaining about the RAST allergy tests he had been given. (ECF No. 16, ¶¶ 70, 110; ECF No. 165, PageID.1620). Plaintiff requested that different testing be performed to

determine whether he suffered from a "protein allergy." (ECF No. 16, ¶¶ 70, 110; ECF No. 165, PageID.1620). As noted above, however, only two weeks earlier Plaintiff participated in a second round of RAST testing which revealed that Plaintiff was not allergic to dairy, cheese, or molds. (ECF No.144, PageID.1036-43). The record contains no indication that another type of allergy testing was ordered or appropriate. Plaintiff merely disagrees with the treatment he received. Such dissatisfaction, however, does not violate the Eighth Amendment. Accordingly, Defendant Mikel is entitled to summary judgment regarding this incident.

Finally, Plaintiff alleges that Defendant Mikel failed to properly respond to two medical kites he submitted on May 25-26, 2021. (ECF No. 16, ¶¶ 84-85, 110; ECF No. 165, PageID.1630, 1633). While both kites were directed to Defendant Mikel, there is no evidence that Mikel read or was otherwise aware of either communication. (ECF No. 165, PageID.1630, 1633). Plaintiff concedes in his complaint that both kites were responded to by different people. (ECF No. 16, ¶¶ 84-85). Accordingly, Defendant Mikel is entitled to summary judgment regarding these incidents.

In sum, for the reasons detailed herein, the undersigned recommends that Defendant Mikel is entitled to summary judgment.

B. Defendant Anderson

Plaintiff alleges that Defendant Anderson violated his rights by terminating and/or refusing to renew his non-dairy diet accommodation. As detailed above, however, the record does not support Plaintiff's belief that he suffers from a dairy

allergy or other condition that necessitates a dairy-free diet. While the Court empathizes with the medical difficulties Plaintiff appears to be experiencing, all Plaintiff has demonstrated in this action is that he disagrees with the medical judgment and decisions of the people that have been involved in his treatment. Plaintiff may disagree with Defendant's professional judgment. Plaintiff may even consider Defendant to have acted negligently. But, as previously noted, such circumstances simply do not violate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Anderson is entitled to summary judgment.

C. Defendant Schultz

Plaintiff alleges that Defendant Schultz violated his rights for relying on the results of the negative RAST tests to deny him a non-dairy diet. Again, the record contains no evidence that Plaintiff suffers from a dairy allergy or other condition that necessitates a dairy-free diet. Plaintiff's disagreement or dissatisfaction with Schultz's professional judgment and/or reasonable reliance on the results of medical testing does not constitute a violation of the Eighth Amendment.

Plaintiff also alleges that Defendant Schultz disregarded "Dr. Yarid's diagnosis" when declining to place him on a non-dairy diet. The record, however, contains no medical records or other communications authored by Dr. Yarid. There is likewise no evidence that this doctor ever examined Plaintiff or even reviewed his medical records. Rather, the record contains a single second-hand notation, from 2017, that Dr. Yarid allegedly agreed with a nurse practitioner that Plaintiff was allergic to certain

-16-

unspecified "dairy proteins." (ECF No. 144, PageID.1011). This observation is not supported by any testing or analysis. Likewise, there is nothing in the subsequent record confirming this assessment. On the other hand, as detailed above, the results of examinations and testing fail to demonstrate that Plaintiff experiences a dairy allergy or other condition necessitating a non-dairy diet. At most, the evidence shows that Plaintiff has an allergy to two items which may appear in dairy feed. As was also noted, however, such is treatable with over-the-counter medications. The undersigned recommends, therefore, that Defendant Schultz is entitled to summary judgment.

      D.      Defendant Quiggly

Plaintiff alleges that Defendant Quiggly conspired with Defendant Anderson to disregard Dr. Yarid's "diagnosis." As discussed above, Defendant Anderson's decision not to provide Plaintiff a dairy-free diet was supported by the results of examination and testing. Also, to reiterate, there is no evidence that Dr. Yarid ever examined Plaintiff, reviewed his medical records, or offered a diagnosis of Plaintiff's condition. At most, the record indicates that a nurse practitioner reported that Dr. Yarid, without ever having examined Plaintiff, agreed with *her* diagnosis. Again, while Plaintiff may disagree with Defendant Anderson's professional judgment such does not violate the Eighth Amendment. Likewise, Defendant Quiggly's alleged role in Defendant Anderson's decision does not violate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Quiggley is entitled to summary judgment.

E.  Defendant Sobieralski

Plaintiff alleges that Defendant Sobieralski violated his Eighth Amendment rights by failing, on or about May 26, 2021, to take photographs of a rash he was then allegedly experiencing. (ECF No. 16, ¶¶ 86, 122). As detailed above, Plaintiff was examined by Defendant Sobieralski on May 26, 2021. (ECF No. 144, PageID.1048-49). Earlier the same day, in response to Plaintiff's request to photograph his rash, a different provider noted that she was aware of no order requiring such. (ECF No. 144, PageID.1047). Plaintiff received treatment from Defendant Sobieralski on the date in question. Defendant's alleged failure to photograph Plaintiff's rash does not violate Plaintiff's Eighth Amendment rights. At most, such constitutes disagreement or dissatisfaction with Defendant's professional judgment and treatment decisions. The undersigned recommends, therefore, that Defendant Sobieralski is entitled to summary judgment.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 143) be granted, Defendant's Motion for Summary Judgment (ECF No. 146) be granted, and this action terminated. For the same reasons the undersigned makes these recommendations, the undersigned finds that an appeal of such would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                Respectfully submitted,

Date: June 3, 2024                                /s/ Phillip J. Green
                                                       PHILLIP J. GREEN
                                                       United States Magistrate Judge